UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FREDERICK DILLABAUGH,<br><br>Defendant. | **3:18-CR-30062-02-RAL**<br><br>**ORDER DENYING MOTION FOR SENTENCE REDUCTION FOR HOME CONFINEMENT** |

## I.      Background

On September 24, 2019, Frederick Dillabaugh (Dillabaugh) pleaded guilty to the charge of possession with intent to distribute a mixture or substance containing a detectable amount of methamphetamine and aiding and abetting in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2.  Doc. 142.  On December 16, 2019, this Court held a sentencing hearing, at which time it considered Dillabaugh's applicable guideline range of 37 to 46 months and the sentencing factors found in 18 U.S.C. § 3553(a).  Doc. 169.  After taking note of Dillabaugh's positive behavior post-indictment in this matter, specifically his participation in sobriety groups on his reservation, this Court determined that a downward variance was warranted and decided that a sentence of 36 months custody followed by three years of supervised release was sufficient but not greater than necessary.  Docs. 172, 172-1.  The Court noted that Dillabaugh had pleaded guilty to a nonviolent offense and recommended that he be allowed to participate in the Bureau of Prison's substance abuse treatment program and that he be placed in the Bureau of Prisons facility located in Yankton, South Dakota.  Doc. 172 at 2.  Dillabaugh was committed to the custody of the United States Bureau of Prisons and is currently confined at Federal Correctional Institution

1

Forrest City Low (Forrest City Low) in Forrest City, Arkansas. See Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last checked June 15, 2020). His projected release date is June 2, 2022. Id.

On March 27, 2020, Dillabaugh sent a request to the warden of his institution requesting compassionate release citing the COVID-19 public health crisis, the distance of the institution from his home and family, and a partially blocked artery in his leg as justification. Doc. 187-1. The request was marked as received on April 2, 2020. Doc. 187-1. Warden DeWayne Hendrix, responded to Dillabaugh's request on April 20, 2020, and denied the request for a reduction in sentence, finding that Dillabaugh's COVID-19 concerns did "not currently warrant an early release from [his] sentence." Doc. 187-2. Before receiving Warden Hendrix's response, Dillabaugh drafted a pro se Motion for Sentence Reduction to Home Confinement under 18 U.S.C. § 3582(c)(1)(A)(i) which was filed with this Court on April 21, 2020. Doc. 180. Pursuant to Standing Order 20-06 issued in light of the COVID-19 pandemic affecting the United States, the Federal Public Defender filed a supplement to Dillabaugh's pro se motion. Doc. 199. The Government field a response opposing the motion, Doc. 202, to which Dillabaugh's counsel has replied, Doc. 210. The Government filed an additional response to Dillabaugh's reply. Doc. 212. The matter is now fully submitted.

Forrest City Low has been hard hit by the COVID-19 pandemic. According to the Bureau of Prisons' reporting website, Forrest City Low currently has 154 inmates and one staff member positive for the novel coronavirus COVID-19 and has 545 inmates and three staff recovered from the disease. See Federal Bureau of Prisons, https://www.bop.gov/coronavirus/#:~:text=COVID %2D19%20Cases&text=There%20are%201%2C957%20federal%20inmates,attributed%20to%2

0COVID%2D19%20disease. (last checked June 15, 2020). No inmate or staff deaths have been reported. Id.

Dillabaugh is 58 years old and takes medication for hypertension and hyperlipidemia. Docs. 160 at ¶ 59; 201 at 4; 194 at 8, 31. As part of surveillance screening at Forrest City Low, Dillabaugh was tested for COVID-19 on May 12, 2020, and his test results came back positive for the virus. Doc. 208. Since receiving his positive test result, Dillabaugh has been screened daily for COVID-19 symptoms. Doc. 208 at 4. He continually reports none of the common symptoms of the disease—that is cough, shortness of breath, muscle pain, fatigue, sore throat, headache, new loss of taste and smell, or chills. Id. According to a letter written by Dillabaugh's sister, Dillabaugh indicated that he had symptoms of the virus one to two weeks prior to getting tested but felt as though he was getting better at the time of testing. Doc. 213.

## II.    Legal Standard for Sentence Reduction

A "court may not modify a term of imprisonment once it has been imposed," except in a few, narrowly defined circumstances. 18 U.S.C. § 3582(c). Dillabaugh seeks a modification under one of those narrow circumstances in that he is asking for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The compassionate release statute as amended by the First Step Act of 2018, in pertinent part provides that

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i)    extraordinary and compelling reasons warrant such a reduction; ...

3

and that such a reduction is consistent with applicable policy
statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

### III.   Discussion

Because the Director of the Bureau of Prisons (Director) has not brought this motion and

because Dillabaugh has not administratively appealed the warden's denial of his request, this Court

may only consider Dillabaugh's motion for a sentence reduction if 30 days have passed from the

date on which the Director received Dillabaugh's administrative request for sentence reduction.

Dillabaugh sent a request to the warden of his institution on March 27, 2020, asking for

compassionate release due to concerns related to COVID-19. Doc. 194 at 2. The warden denied

Dillabaugh's request on April 20, 2020, and informed Dillabaugh that if he was not satisfied with

the response, he could appeal the decision via the administrative remedy process. Doc. 194 at 1.

There appears to be somewhat of a debate among district courts about whether the statutory

30-day bypass provision allows the defendant to file a motion for compassionate release with the

court if the warden has responded to the request, or if the warden's response triggers the full use

of the administrative appeals process before moving the district court for relief. Compare United

States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *2 (S.D. Cal. Mar. 3, 2020)

("Because more than 30 days have passed without a response from the warden, the Court has

jurisdiction to hear the motion."); United States v. Brown, 411 F. Supp.3d 446, 452 (S.D. Iowa

Oct. 8, 2019) ("Exhaustion occurs when the BOP denies a defendant's application or lets thirty

days pass without responding to it."); United States v. Moravetz, 4:18-cr-40117-KES, Doc. 231

(D.S.D. April 27, 2020) ("[A]n inmate can [bring] a motion for compassionate release directly to

the court if the Bureau of Prisons does not act on an inmate's compassionate release motion within

30 days of receipt of the motion, or if the inmate has fully exhausted all administrative right to

appeal a failure of the Bureau of Prisons to bring a motion on the inmate's behalf (whichever is earlier)."); with United States v. Brown, 4:05-CR-00227-1, 2020 WL 2091802, at *3 (S.D. Iowa Apr. 29, 2020) ("[T]he statute's plain text states only that thirty days must pass after the defendant requests compassionate release from the warden.  No more, no less."); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (finding that the court could rule on a reduction in sentence motion thirty days after the Bureau of Prisons received a request from the defendant, even though the BOP responded to the request before the thirty days had elapsed).  In this Court's view, it is better to follow the plain language of the statute and consider Dillabaugh's motion on the merits to determine if "extraordinary and compelling reasons warrant such a [sentence] reduction" after considering the sentencing factors found in 18 U.S.C. § 3553(a) and the applicable policy statements of the Sentencing Commission.  18 U.S.C. § 3582(c)(1)(A)(i).

This Court conducted Dillabaugh's sentencing hearing approximately six months ago and considered the relevant sentencing factors found in 18 U.S.C. § 3553(a).  As part of that inquiry, this Court considered "the history and characteristics of the defendant" and decided to vary downward from Dillabaugh's calculated guideline range on that basis.  After reviewing those same factors, this Court determines that the sentence imposed of 36 months imprisonment followed by three years supervised release was appropriate.

Next, this Court looks to whether "extraordinary and compelling reasons justify a reduction in sentence.  Congress has left it to the Sentencing Commission to promulgate what constitutes "extraordinary and compelling reasons," and to provide examples of such.  28 U.S.C. § 994(t).  The Sentencing Commission set forth certain scenarios that would constitute "extraordinary and compelling reasons" in the commentary notes to Federal Sentencing Guideline § 1B1.13.  Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the

age of the defendant in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a provision indicating that other reasons may constitute extraordinary and compelling reasons for release "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, the Sentencing Commission has not updated these provisions since the passage of the First Step Act which allowed courts to consider compassionate release motions brought by someone other than the Director because the Sentencing Commission has not had a quorum. This has caused district courts to question whether the policy statement still applies, and specifically whether the courts may consider other reasons for release that have not been brought by the Director. See Mondaca, 2020 WL 1029024, at *3 (discussing the discord among district courts); Spears, 2019 WL 5190877, at *3 (same); United States v. Brown, 411 F. Supp.3d at 449-50 (same). Several district courts considering the issue have determined that the discretion given to the Director in § 1B1.13 comment note 1(D), also permits federal judges to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the catch-all provision of U.S.S.G. § 1B1.13 comment note 1(D)).

The global COVID-19 pandemic has certainly had extraordinary effects on this country and its people. Across the nation businesses have altered their methods of operation, and people have changed the way they interact with one another. There is little doubt that this pandemic will have long-lasting effects on society, but what those effects are exactly remains to be seen. Despite this, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."

6

United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  The question then becomes whether Dillabaugh's medical conditions—hypertension and hyperlipidemia—combined with the fact that he has contracted COVID-19 while in Forrest City Low justify compassionate release.  In the very short time that COVID-19 has been on the global radar, researchers have determined that the disease tends to have more severe effects on males over age 50 who suffer from certain pre-existing medical conditions like heart disease.  Docs.  199-1 at 1; 199-2 at 1.  However, Dillabaugh has contracted the disease and according to his medical records is asymptomatic.  Doc. 208.  His symptoms and temperature are being monitored daily by the staff at Forrest City Low.  Id. Although Dillabaugh is of an age and has a medical condition that could put him at higher risk of complications related to COVID-19, he has not experienced such complications after contracting the illness, and considering the close monitoring he receives at Forrest City Low, it is expected that he will receive adequate care if such complications arise.  Therefore, at this time, this Court does not find that Dillabaugh's current condition constitutes an extraordinary and compelling reason to reduce his sentence.

This Court takes the threat related to COVID-19 seriously, and it sympathizes with Dillabaugh's condition.  This Court sincerely hopes that Dillabaugh makes a full recovery and finds his way safely home at the expiration of his sentence.

## IV.    Conclusion and Order

For good cause, it is hereby

ORDERED that Dillabaugh's motion for sentence reduction to home confinement, Doc. 180, is denied.

DATED this 19ᵗʰ day of June, 2020.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE